James T. MUDD, Petitioner/Appellant,

v.

Nancy E. MUDD,
Respondent/Respondent.

No. 61433.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 9, 1993.

Kathie Blackman Dudley, Elsberry, for petitioner/appellant.

Christopher Karlen, Margaret L. Van Dijk, Ziercher & Hocker, Clayton, for respondent/respondent.

AHRENS, Presiding Judge.

In this action to modify child support obligations, James T. Mudd (father), appeals from the trial court's order modifying the decree of dissolution. We affirm.

The parties' marriage was dissolved January 8, 1985. Nancy E. Mudd (mother) filed a motion to modify the dissolution decree on April 16, 1988. Father subsequently filed a counter-motion to modify that decree. On October 15, 1991, following a hearing on the parties' motions, the trial court entered an order modifying the dissolution decree.

The trial court calculated father's child support obligation pursuant to Form 14. As modified, father's monthly child support obligation for the two children in mother's custody, Jennifer and Kelly, increased from $374.84 per child to $643.25 per child. Further, the trial court ordered father to pay 83% of Kelly's orthodontic expenses which are incurred after March 20, 1991, and which are not covered by insurance. The trial court also ordered father to pay 83% of Kelly's post-high school educational expenses.

In his first point, father alleges the trial court's awards of child support, orthodontic expenses, and college expenses are excessive and an abuse of discretion. Father attacks the awards in five subpoints, designated (A) through (E).

In subpoint (A), father contends the trial court erroneously based its awards on its finding that 55% "is a reasonable and credible percentage of gross receipts for [father] to realize from his sole proprietorship[.]" Father asserts this finding was not supported by any evidence, "ignores the formula for gross income provided by Form 14[,] and is clearly excessive and unjust."

■ Our review of an order modifying child support obligations is limited to determining whether the order is supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Laws v. Laws,* 796 S.W.2d 439, 440 (Mo.App.1990). Moreover, we defer to the trial court's determinations of credibility. *Boudreau v. Benitz,* 827 S.W.2d 732, 733 (Mo.App.1992). We view "the evidence and permissible inferences therefrom in the light most favorable to the trial court's order" and disregard "all contrary evidence and inferences." *Id.*

■ Father, a certified public accountant, has been a sole practitioner in Troy, Missouri, since 1978. Father testified he has realized the following gross and net business receipts.

| YEAR | GROSS | NET |
|---|---|---|
| 1988 | $233,181 | $72,564 |
| 1989 | $176,952 | $30,020 |
| 1990 | $204,092 | $34,000 |

Based on these figures, father argues his gross income from his practice represented only 17% to 31% of gross receipts. Father asserts the trial court ignored these percentages as well as his testimony that according to national statistics it is not unusual for CPA offices the size of his to net approximately one-third of gross receipts.

As a sole practitioner, father's gross income for purposes of Form 14 is defined as "gross receipts minus ordinary and necessary expenses required to produce income." MO.CIV.P. FORM 14, Directions for Use. Father acknowledges that in determining gross income pursuant to Form 14, the trial court was permitted to "exclude from ordinary and necessary expenses amounts for

depreciation expenses, investments tax credits and other noncash reductions of gross receipts." MO.CIV.P. FORM 14, Directions for Use. However, father contends that if depreciation is excluded from expenses, his gross income for 1988–1990 was only 24% to 34% of gross receipts.

The trial court was in a better position to judge the credibility of father's testimony, as well as that of father's office manager regarding the ordinary and necessary business expenses father's business has incurred. We defer to that determination of credibility. *Boudreau,* 827 S.W.2d at 733. Further, nothing in the record indicates the trial court failed to consider father's testimony regarding national statistics of net business receipts realized by other CPA offices. Rather, the trial court was entitled to determine what weight, if any, to afford that testimony. We find no error in the trial court's computation of father's income. Accordingly, subpoint (A) is denied.

■ We preface our review of subpoints (B), (C), (D) and (E) by noting that Rule 88.01 requires both parties to complete Form 14. "On appeal, a party who wishes to challenge the child support award on the basis that it does not conform to the requirements of Rule 88.01 may include in the legal file copies of Civil Procedure Form No. 14 that were before the trial court." *Ibrahim v. Ibrahim,* 825 S.W.2d 391, 398 (Mo.App.1992). Although father filed a proposed order which purported to follow "the Supreme Court guidelines as to child support," father did not include a completed Form 14 in the legal file.

In *Ibrahim,* decided after the hearing on the motions to modify in the present case, the southern district of this court held a father's failure to show he submitted a completed Form 14 was "akin to pursuing a different theory for recovery on appeal than was pursued at trial." *Id.* Accordingly, the southern district declined to convict the trial court of error on an issue not before that lower court. *Id.* In *Boudreau,* 827 S.W.2d 732, we cited *Ibrahim* and warned, "[a]n appellant seeking relief from a child support award without includ-

ing [a completed Form 14] is doing so at his or her peril." *Id.* at 737 n. 15. We reiterate that warning. However, we will review father's claims of error in subpoints (B), (C), (D) and (E) on the merits.

■ Under subpoint (B) father asserts the trial court erred in calculating father's child support obligation pursuant to Form 14, in that the trial court improperly ignored the split custody issue and failed to consider all the needs of Daniel, the parties' nineteen year-old child who is in father's custody. Father argues the trial court should have calculated the child support award using the column for three children, rather than using the column for two children.

As noted, father filed a counter-motion to modify. That counter-motion requested, *inter alia,* an order requiring mother to contribute to the support of Daniel. Father testified that since entry of the original decree he paid Daniel's orthodontic bill of $2,200.00. Father conceded that mother may have paid a portion of that bill. He also testified that Daniel was living with him, and that he would continue to provide financial support when Daniel returned to college. At father's request, the trial court took judicial notice of father's income and expense statement itemizing Daniel's monthly living expenses which totaled $474.00.

In its order, the trial court found father "failed to present any evidence of the cost of his support of Daniel W. Mudd or any evidence of any changed circumstances regarding the cost of his support of said child pursuant to Section 452.370(1) and (2) R.S.Mo. to justify the Court's granting his Counter–Motion to Modify or for the Court to knowledgeably enter an order of child support for the child."

Father, relying on *Boudreau,* 827 S.W.2d at 736–737, asserts the trial court was required to consider the needs of all three children in calculating the child support award pursuant to Form 14. *Boudreau* is distinguishable and, therefore, not controlling. The two children awarded support in *Boudreau* were subjects of the action to

modify the dissolution decree. Moreover, the trial court made specific findings regarding both children's reasonable and necessary monthly expenses. Here, the trial court's denial of father's counter-motion effectively removed Daniel as a subject of the case.

Father asserts that "[e]ven if the counter-motion to modify was not granted and [mother] ordered to pay an amount of child support for [Daniel], [father] should have been given some consideration for his direct and unreimbursed support for [Daniel]." In support of this assertion, father directs us to the Comments to Form 14 which provide, in part, that "Consideration should be given for direct and unreimbursed support provided to a child not the subject of this case, but who is in the custody of one of the parties." MO.CIV.P. FORM 14, Comments.

Contrary to father's contention, the trial court did not ignore Daniel or Daniel's needs. Rather, the trial court considered father's assertion that he was providing support to Daniel and determined no evidence was presented which would justify an award of child support for Daniel. In light of that determination, and deferring to the trial court's opportunity to judge the credibility of the witnesses, the trial court properly calculated the child support award pursuant to Form 14's column for two children. Finding no error, we deny father's subpoint (B).

■ In subpoint (C) of point one, father alleges the trial court erred in calculating the child support award, because it failed to consider that father, "pursuant to the original decree was paying $250.00 per month for health insurance for himself and the three children and the court did not reduce his child support accordingly."

Section 452.353.10 RSMo (Supp.1991) provides: "The court shall consider the duty of the obligor to maintain dependent health and dental insurance coverage when determining the amount of child support to be paid by the obligor." In *Switzer v. Switzer*, 821 S.W.2d 125, 127 (Mo.App.1992), this court noted that § 452.353.10 affords the trial court no discretion, in that the

statute mandates reduction of child support in light of one parties' duty to maintain health and dental insurance coverage for the parties' children. Father acknowledges, however, that "it is not clear from the record exactly how much of the $250.00 premium is for the three children...." In fact, nothing in the record indicates what portion of that premium, if any, is attributable to insurance coverage for the children.

Although § 452.353.10 mandates a reduction in child support, *Switzer*, 821 S.W.2d at 127, the statute does not require the trial court to speculate as to the expense a party incurs to maintain health and dental insurance coverage for the parties' children. Here, in the absence of any evidence regarding the portion of the premium attributable to insurance coverage for the children, the trial court did not err in declining to reduce the child support award based on mere speculation. Father's subpoint (C) is denied.

■ In subpoint (D), father asserts the trial court erred in entering the modified child support award, because the award "was not based on a showing of increased expenses" for the two children in wife's custody.

To warrant modification of the child support award, wife was required to "demonstrate a change of circumstances so substantial and continuing as to make the original award unreasonable." *Weber v. Weber*, 804 S.W.2d 756, 758 (Mo.App.1990).

Father states in his brief that gross receipts from his CPA practice increased from $183,221.00 in 1985 to $204,092.00 in 1990. As we have previously discussed, the trial court properly computed father's gross income as fifty-five percent of gross receipts. Therefore, father has realized a substantial increase in his income since the original dissolution decree was entered.

The evidence established that since the date of that original decree, Jennifer has entered college and Kelly has advanced through the sixth grade. Evidence of the increased educational costs associated with Jennifer attending college and Kelly partic-

ipating in school and social activities was presented to the court. "The increasing needs of growing children are valid reasons for modification if it is demonstrated these conditions render the existing order unreasonable." *Id.* The increased expenses of Jennifer and Kelly resulting from additional educational and accompanying expenses, together with the substantial increase in father's income constitute sufficient changes to support the trial court's award of increased child support. *See id.* Father's subpoint (D) is denied.

■ Under subpoint (E), father contends mother's evidence regarding the children's needs "rebutted the Form 14 presumption[,] yet the trial court awarded the higher figure from Form 14 without citing factors to support the difference in that [mother's] expenses for Jennifer and Kelly, without proration of household expenses, were $976.39 and the court awarded $1,286.50 per month against [father]." Father argues the trial court, under *Harding v. Harding,* 826 S.W.2d 404, 407 (Mo.App. 1992), was required to enter a written finding "which includes the actual numbers used in calculating the non-Form 14 child support, as well as the factors which made the Form 14 amount inappropriate." *Id.* We disagree.

The trial court determined the parties have a gross monthly income of $10,000.00, 83% of which the court attributed to father. Based on the parties' monthly income, the trial court used Form 14's Schedule of Basic Child Support Obligations to find the two children in mother's custody have a need of $1,550.00. Accordingly, the trial court determined father's monthly obligation to be $1,286.50, which is 83% of $1,550.00.

In her most recent statement of income and expenses, mother listed the children's monthly expenses under section I as totaling $976.39. Under section J, mother listed monthly "Day Care Center or Babysitter" expenses of $7.00. Mother also listed monthly expenses of $29.73 incurred in maintaining, licensing and insuring Jennifer's automobile. In addition, mother testified she sends Jennifer $200.00 per month

for housing and utilities expenses during the nine months Jennifer is in college. Mother also sends Jennifer $50.00 per week during those months to cover additional college-related expenses. In addition to the children's recreational expenses listed on the expense statement, mother also spends $41.00 per month for Kelly's gymnastics lessons. This evidence demonstrated the children have an average monthly need of approximately $1,366.62.

In determining need, the trial court could have properly allocated to Jennifer and Kelly an additional $183.38 of the monthly utility, transportation, and housing expenses mother incurred. *See Scheidt v. Scheidt,* 776 S.W.2d 470, 473 (Mo.App. 1989). Accordingly, we find support under the facts of this case for a determination that mother did not rebut the Form 14 presumption.

The trial court took judicial notice of mother's income and expense statement. Although father disputes the reasonableness of mother's claimed expenses, her statement and testimony identifying the children's needs were sufficient evidence on which to base the child support award. *See Rothfuss v. Whalen,* 812 S.W.2d 232, 238 (Mo.App.1991). "The expenses need not be proved with absolute particularity, and the trial court may, at its option, accept or reject such evidence." *Id.* Father's subpoint (E) is denied.

■ In his second point, father alleges the trial court erred in ordering him to pay $4,000.00 of wife's attorney's fees, "since no unusual circumstances were proven to justify such an award...."

"The trial court has broad discretion in determining the reasonableness of an award for attorney's fees." *Lyles v. Lyles,* 710 S.W.2d 440, 444 (Mo.App.1986). "A modification order requiring one party to pay the attorney's fees of another necessitates a showing of unusual circumstances justifying deviation from the rule that each party bears its own litigation costs." *Id.* Section 452.355.1 RSMo (Supp.1991) directs the trial court to consider "all relevant factors including the financial resources of

both parties ..." in awarding attorney's fees. § 452.355.1. "This is the standard by which the trial court must abide in a modification proceeding." *Lyles*, 710 S.W.2d at 444.

At the time of the modification hearing, mother had an annual income of $23,000.00; the trial court found husband's annual income exceeded $100,000.00. Mother testified she could not afford to pay her attorney's fees. We find no abuse of discretion in the decision to award mother attorney's fees.

Father also asserts the trial court's award of attorney's fees exceeded the amount mother requested. This argument is wholly without merit. Mother's evidence showed she had attorney's fees, including those incurred through the conclusion of the modification hearing, totaling $4,100.00. Therefore, the trial court did not abuse its discretion in awarding wife $4,000.00 for those fees. Point two is denied.

The trial court's judgment is affirmed.

CRIST, and REINHARD, JJ., concur.